**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARLA ARAMOUNI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACELYRIN, INC., et al.,<br><br>Defendants. | Case No. CV 23-9672 FMO (MAAx)<br><br>**ORDER RE: MOTION TO DISMISS** |

Having reviewed and considered all the briefing filed with respect to the Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (Dkt. 52, "Motion"), filed by Acelyrin, Inc., ("Acelyrin"), Dan Becker, Alan B. Colowick, Bruce C. Cozadd, Mardi C. Dier, Henry O. Gosebruch, Shao-Lee Lin, Patrick Machado, Beth Seidenberg, and Dawn Svoronos (collectively, "defendants"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

Many motions to dismiss can be avoided if the parties confer in good faith (as required by Local Rule 7-3), especially for perceived defects in a complaint, answer or counterclaim that could be corrected by amendment. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment). Moreover, a party has the right to amend the complaint "once as a matter of course[.]" Fed. R. Civ. P.

15(a)(1). Even after a complaint has been amended or a responsive pleading has been served, the Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit requires that this policy favoring amendment be applied with "extreme liberality." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).

The court will grant defendants' Motion and dismiss plaintiffs' First Amended Class Action Complaint (Dkt. 45, "FAC") with leave to amend. In preparing the Second Amended Class Action Complaint ("SAC"), plaintiffs shall carefully evaluate the issues discussed in this Order and the contentions set forth in defendants' Motion. For example, the court is skeptical that plaintiffs have adequately alleged scienter,[1] a necessary element of plaintiffs' claims under § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j, et seq., and Rule 10b-5, 17 C.F.R. § 240.10b-5. See Nguyen v. Endologix, Inc. ("Endologix"), 962 F.3d 405, 413 (9th Cir. 2020). The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, imposes "specific pleading requirements, including requiring plaintiffs to state with particularity . . . the facts evidencing scienter." In re Rigel Pharms., Inc. Sec. Litig. ("Rigel Pharms."), 697 F.3d 869, 876 (9th Cir. 2012). To satisfy these requirements, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind[,]" 15 U.S.C. § 78u-4(b)(2)(A), i.e., that a defendant "made false or misleading statements either intentionally or with deliberate recklessness." Endologix, 962 F.3d at 414 (internal quotation marks omitted). "The strong inference must be cogent and compelling, [and] thus strong in light of other [countervailing] explanations, not merely reasonable or permissible." Espy v. J2 Glob., Inc., 99 F.4th 527, 535 (9th Cir. 2024) (internal quotation marks omitted).

Here, plaintiffs' scienter allegations rest on two factual premises. First, plaintiffs allege that defendants "knew of, or were deliberately reckless, to the falsity [of] their statements and

[1] Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319, 127 S.Ct. 2499, 2507 (2007) (internal quotation marks omitted).

omissions" concerning "the clinical trials and efficacy of izokibep." (Dkt. 45, FAC at ¶¶ 6-7). Specifically, plaintiffs allege that defendants omitted discontinuation rates observed in clinical trials despite knowing "that Part A experienced a high number of patient discontinuation[,]" and "receiv[ing] enough near real-time data on discontinuation in Part B to know [the] issue would seriously compromise the anticipated Part B results." (Id. at ¶¶ 48, 76, 167). Second, plaintiffs allege that defendants "also had a motive to omit the discontinuation rates[.]" (Id. at ¶ 10). According to plaintiffs, Acelyrin was a new "company with no prior FDA-approved drug," and defendants, therefore, had "to omit the discontinuation rates observed in clinical trials to successfully complete the[ir] IPO[,] maintain the Company's artificially inflated stock price[,]" and "remain commercially relevant and viable[.]" (See id. at ¶¶ 10, 170).

These type of "allegations encounter an immediate first-level problem[,]" Endologix, 962 F.3d at 415, as it is not clear why defendants would "omit the discontinuation rates observed in clinical trials[,]" (see Dkt. 45, FAC at ¶ 10), if defendants knew that "weak Part A results (rendered meaningless by high dropouts) [would] read through to the 'disappointing' (but, if the truth were known, expected) Part B results plagued by the same issue[.]" (See id. at ¶ 169). As in Endologix, the "theory does not make a whole lot of sense. It depends on the supposition that defendants would rather keep the stock price high for a time and then face the inevitable fallout once [the disappointing clinical trial result] was revealed. If defendants had sought to profit from this scheme in the interim, such as by selling off their stock or selling the company at a premium, the theory might have more legs." Endologix, 962 F.3d at 415. But, as defendants note, plaintiffs do not "allege that Dr. Lin, or any defendant, engaged in insider sales while Acelyrin's stock was allegedly inflated." (Dkt. 52, Motion at 29). In other words, defendants' conduct "appears to be "inconsistent with Plaintiff[s'] theory that financial motive establishes scienter here." See Rigel Pharms., 697 F.3d at 884.

Next, the court questions whether plaintiffs have sufficiently alleged the materiality of defendants' purported misrepresentations or omissions. "To plead a claim under § 10(b) and Rule 10b-5, a plaintiff must allege (1) a material misrepresentation or omission[.]" Endologix, 962 F.3d at 413 (internal quotation marks omitted). Here, plaintiffs point to "four categories of purportedly

false and misleading statements and omissions about [defendants'] izokibep HS trials," (Dkt. 55, Opp. at 12), including that defendants omitted disclosing both the statistical methodology used to calculate Part A's efficacy results,[2] and that Part B would use non-responder imputation, or NRI, a different, more rigorous methodology. (See Dkt. 45, FAC at ¶¶ 68-75). Plaintiffs allege that the Part A omission was material because LOCF always produces biased, inflated results as compared to more rigorous methodologies, like NRI, which would have produced "less impressive" efficacy results. (See id. at ¶ 71). According to plaintiffs, if defendants had disclosed that "Part A results were calculated using LOCF and that Part B outcomes would be calculated using NRI, then observant, trained analysts could have predicted that Part B results would be lower than Part A," which "would have curbed enthusiasm for the Part B results, and of course, the value of the IPO." (Id. at ¶ 74).

Still, the court questions whether such allegations are sufficient to demonstrate that the omissions were materially misleading – that is, whether the disclosure of the methodology used to calculate Part A's results would have been viewed by investors as "significantly alter[ing] the total mix of information made available" for their investment decision-making. See, e.g., In re Nektar Therapeutics Sec. Litig. (In re Nektar), 34 F.4th 828, 836 (9th Cir. 2022) (holding that plaintiff failed to plead that defendant's positive Phase I clinical trial results were materially misleading where plaintiff merely alleged the results were based on skewed, outlier data, but failed to provide "any meaningful context or information about why an investor's assessment of [defendant] would have changed if [the] outlier data had been excluded") (internal quotation marks omitted). Here, plaintiffs allege that knowledge of the biased LOCF methodology would "have curbed enthusiasm" for the Part B results and the value of the IPO. (See Dkt. 45, FAC at ¶ 74). However, it is difficult to assess whether investors would have viewed the disclosure as

[2] Plaintiffs allege that defendants employed the last observation carried forward ("LOCF") methodology to calculate their Part A results. (See Dkt. 45, FAC at ¶ 69). However, defendants assert that "Acelyrin's Part A trial used a DAO [data as observed] methodology, not LOCF[.]" (See Dkt. 52, Motion at 20). Ultimately, plaintiffs argue that it is irrelevant whether defendants used LOCF or DAO, since neither methodology accounts for patient discontinuations. (See Dkt. 55, Opp. at 15).

significantly altering their available information. "Put another way, we simply do not know what the results would have been [if not skewed by LOCF] or what those results would mean as a medical matter." In re Nektar, 34 F.4th at 836.

By contrast, the court is skeptical of defendants' argument that the PSLRA's safe harbor provision requires dismissal of all of plaintiffs' claims. Although defendants assert there "can be no dispute that all of the challenged statements are forward-looking in nature[,]" (see Dkt. 52, Motion at 16), plaintiffs are challenging present or historical facts found within mixed statements that contain "non-forward-looking statements about current and past facts as well as forward-looking statements[.]" In re Quality Sys., Inc. Secs. Litig., 865 F.3d 1130, 1141 (9th Cir. 2017). The PSLRA's safe harbor provision does not protect the non-forward-looking portions of mixed statements.[3] Id. at 1142.

Finally, the court is skeptical of plaintiffs' argument that Rule 9(b)'s heightened pleading requirements do not apply to their claims brought under the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77, et seq. (See Dkt. 55, Opp at 35-38). Plaintiffs allege that defendants violated sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77o. (See Dkt. 45, FAC at ¶¶ 197, 346-58). However, because plaintiffs' Securities Act allegations do not appear to "allege different misrepresentations" from their Exchange Act claims, the Securities Act allegations also appear to sound in fraud, thus triggering the application of Rule 9(b). See Rigel Pharms., 697 F.3d at 885-86 ("We have held that a plaintiff's nominal efforts to disclaim allegations of fraud with respect to its section 11 claims are unconvincing where the gravamen of the complaint is fraud and no effort is made to show any other basis for the claims[,] . . . although the section 11 claim does not adopt all of the allegations contained in the rest of the complaint, it does not allege different misrepresentations. . . . Accordingly, Plaintiff's section 11 claim is grounded in fraud[.]").

---

[3] While In re Quality Sys., Inc. does not discuss the bespeaks caution doctrine, it stands to reason that the logic undergirding its assessment of mixed statements applies to both the statutory safe harbor and its common-law counterpart. See, e.g., In re Copper Mountain Sec. Litig., 311 F.Supp.2d 857, 881-82 (N.D. Cal. 2004) (suggesting that the parameters of the bespeaks caution doctrine became coextensive with the PSLRA's statutory safe harbor following the statutory safe harbor's codification).

Separately, the court is in receipt of the Suggestion of Death of Co-Lead Plaintiff Fred Bergman filed by plaintiffs. (Dkt. 71, Suggestion of Death). On its own motion, the court will set a deadline by which Mr. Bergman's estate must elect whether to continue serving as co-lead plaintiff in this action.

Based on the foregoing, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint **(Document No. 52)** is **granted**.

2. The First Amended Class Action Complaint (**Document 45**) is **dismissed with leave to amend**.

3. Plaintiffs shall file a Second Amended Class Action Complaint, attempting to cure the deficiencies set forth above, as well as the other alleged defects outlined in defendants' Motion, or a Notice of Intent to Stand on First Amended Class Action Complaint ("Notice of Intent"), no later than **February 5, 2026**. See WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1135-36 (9th Cir. 1997) ("Unless a plaintiff files in writing a notice of intent not to file an amended complaint, such dismissal order is not an appealable final decision. In a typical case, filing of such notice gives the district court an opportunity to reconsider, if appropriate, but more importantly, to enter an order dismissing the action, one that is clearly appealable."). The court expects that defendants will agree to any amendments that will or attempt to cure the alleged defects.

4. By no later than **January 30, 2026**, plaintiffs shall file a notice indicating whether Mr. Bergman's estate intends to continue serving as co-lead plaintiff in this action.[4] If no such notice is filed by the date set forth in this paragraph, the court will dismiss Mr. Bergman from this action.

5. The Second Amended Class Action Complaint must be labeled "Second Amended Class Action Complaint," filed in compliance with Local Rule 3-2 and contain the case number assigned to the case. In addition, plaintiffs are informed that the court cannot refer to a prior pleading in order to make their Second Amended Class Action Complaint complete. Local Rule 15-2 requires

[4] No extensions will be given as the Notice of Suggestion of Death was filed nearly three months ago, and there have been no filings or any docket activity relating to Mr. Bergman's estate.

that an amended pleading be complete in and of itself without reference to any prior pleading. This is because, as a general rule, an amended pleading supersedes the original pleading. See Ramirez v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent. In other words, the original pleading no longer performs any function[.]'") (citations and internal quotation marks omitted).

6. Plaintiffs are cautioned that failure to timely file a Second Amended Class Action Complaint or Notice of Intent shall result in this action being dismissed without prejudice for failure to prosecute and failure to comply with a court order. See Fed. R. Civ. P. 41(b); Link v. Wabash R.R. Co., 370 U.S. 626, 629-30, 82 S.Ct. 1386, 1388 (1962); Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065 (9th Cir. 2004) ("The failure of the plaintiff eventually to respond to the court's ultimatum – either by amending the complaint or by indicating to the court that it will not do so – is properly met with the sanction of a Rule 41(b) dismissal."); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-63 (9th Cir. 1992) (affirming dismissal for failure to file amended complaint as ordered by district court).

7. Defendants shall file their Answer to the Second Amended Class Action Complaint or a motion pursuant to Fed. R. Civ. P. 12 no later than **February 19, 2026.**

9. In the event defendants wish to file another motion to dismiss,[5] then counsel for the parties shall, on **February 12, 2026, at 10:00 a.m.**[6] meet and confer in person, via video, or telephonically to discuss defendants' motion to dismiss. Defendants' motion must include copies of all meet and confer letters as well as a declaration that sets forth, in detail, the entire meet and confer process (i.e., when and where it took place, how long it lasted and the position of each attorney with respect to each disputed issue that will be the subject of the motion). Failure to

---

[5] If defendants file another motion to dismiss, the parties' memorandum of points and authorities shall not "exceed 7,000 words, including headings, footnotes, and quotations, but excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits." Local. Rule 11-6.1.

[6] Counsel may agree to meet and confer at another time without seeking court approval for such an agreement.

include such a declaration will result in the motion being denied.

Dated this 26th day of January, 2026.

/s/

Fernando M. Olguin
United States District Judge