Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Counsel for Kamel Boukadoum and
Co-Lead Counsel for the Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| KAMEL BOUKADOUM, ESTATE OF FRED BERGMAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ACELYRIN, INC., SHAO-LEE LIN, MARDI C. DIER, BRUCE C. COZADD, DAN BECKER, ALAN B. COLOWICK, HENRY O. GOSEBRUCH, PATRICK MACHADO, BETH SEIDENBERG, and DAWN SVORONOS, <br><br> Defendants. | No. 2:23-cv-09672-FMO-MAA <br><br> **LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND NOTICE OF DOCUMENTS INCORPORATED BY REFERENCE IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> Hearing Date:  March 19, 2026 <br> Time:  10:00 a.m. <br> Courtroom:  6D <br> Judge:  Hon. Fernando M. Olguin |

Lead Plaintiffs respectfully oppose Defendants' Request for Judicial Notice and Notice of Documents Incorporated by Reference in Support of their Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("SAC," ECF No. 74). Defendants present 24 extrinsic documents (Exhibits A-X) for the Court's consideration in assessing their Motion to Dismiss ("Motion" or "MTD") (ECF No. 75).

Lead Plaintiffs do not dispute that many of these documents are referred to in the SAC and form the basis of Plaintiffs' claims. Lead Plaintiffs also do not contest these documents' authenticity or that many of these documents were publicly available. As explained below, Lead Plaintiffs do, however, object to Defendants' improper application of the incorporation-by-reference and judicial notice doctrines with respect to Exhibits B, F-H, K-N, P, and Q-X.

## A.    Defendants' Reliance on Exhibits Q-X to Contradict the SAC

Under the doctrines of incorporation by reference and judicial notice, Defendants ask the Court to accept their subjective interpretation of the contents of the Exhibits as true to undermine Plaintiffs' well-pled factual allegations and support their counternarrative of events - a tactic the Ninth Circuit and this Court have repeatedly rejected. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (admonishing "a concerning pattern in securities cases like this one: exploiting [judicial notice and incorporation by reference] improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage."); *see also DalPoggetto v. Wirecard AG*, 2020 WL 2374948, at *1 (C.D. Cal. Apr. 15, 2020) (Olguin, J); *Longo v. OSI Sys., Inc.*, 2020 WL 3124221, *1 (C.D. Cal. March 11, 2020) (Olguin, J) (same).

Here, Defendants rely on "cited clinical literature" (Exs. Q-X) to argue that "potentially problematic" discontinuations are "*in treatment arm(s) or differential rates across the arms*" (MTD 15-16 & n16)—which contradicts the SAC's well-plead allegations that the rate of general discontinuations at the time of the IPO would alert to a material risk of trial failure. SAC at ¶¶66-86. As the SAC alleges, by the IPO,

-1-

Acelyrin had completed Part B enrollment and 56% of patients had already finished the trial (¶¶69-74, 84), and because Acelyrin monitored discontinuations in near real-time (¶76), Defendants possessed objective data showing a discontinuation rate trending toward the "fatal" 20% threshold.  ¶¶81-89.  While Defendants broadly invoke this literature to argue over factual disputes such as about the known impact of discontinuations on the data at the time of the IPO, e.g., MTD 15-16 & n16, this Court is required at the motion to dismiss stage to assume the truth of Lead Plaintiffs' well-pled allegations.

As a result, Defendants cannot use their self-serving interpretation of these documents to "create[] a defense to the well-pled allegations in the complaint[.]" *Khoja*, 899 F.3d at 1002.  Defendants' argument "is, at best, an inference drawn from disputed facts contained within the [document] and, accordingly, is not appropriately subject to judicial notice." *Cederberg v. Washington Cnty. Consol. Commc'ns Agency,* 2019 WL 2929505, at *6 (D. Or. July 8, 2019) (declining notice of transcript submitted for the truth of its contents and inferences drawn from them to dispute allegations in the complaint); *see also Cottle v. Plaid Inc.,* 536 F.Supp.3d 461, 477 (N.D. Cal. 2021) (declining judicial notice of public documents "[g]iven disputes about the meaning and relevance of these materials"); *In re Apple Inc. Sec. Litig.,* 678 F.Supp.3d 1147, 1153 (N.D. Cal. 2023) (declining judicial notice of news article that defendants claimed "disproves [CEO's] intent to defraud shareholders"); *DalPoggetto v. Wirecard AG*, 2020 WL 2374948, at *1 (C.D. Cal. Apr. 15, 2020) (denying judicial notice of documents defendants were using to create a defense to the well-pled allegations in the complaint).

**B.    Defendants Improperly Seek Judicial Notice of Exhibits F-H As Evidence of Their Mental State**

Defendants also appear to be using Exhibits F-H as evidence of their mental state, arguing that the time of the IPO "it was still Defendants' judgment that, notwithstanding the blinded data, there was no foreseeable issue precluding, or materially threatening,

-2-

trial success" at the time of the IPO.  MTD 16.  Relying on these documents, Defendants argue, for instance that, management's "judgment [not to disclose the discontinuation rate] was influenced by, *inter alia*, (i) having over-enrolled Part B to address any discontinuance risk; (ii) the DMC's review of unblinded Part B results; and (iii) other aspects of izokibep and the HS trial that ultimately led to a successful Phase 3 trial." MTD 16 (citing MTD 5-7, which relies on Exs. F-H).  It is axiomatic, however, that "the Court may take judicial notice of matters of public record, but it 'cannot take judicial notice of disputed facts contained in such public records.'" *Poisson v. Aetna Life Ins. Co.,* 488 F.Supp.3d 942, 945 (C.D. Cal. 2020) (quoting *Khoja*, 899 F.3d at 999); *see also Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F.Supp.3d 1328, 1349, n.153 (C.D. Cal. 2014) ("The court takes judicial notice of the SEC filings only for their existence and contents, not for the truth of the information contained in them.").

Defendants' Motion thus reveals that their requested notice is not limited to the existence of these documents but for the truth of the information contained therein – and form part of fact-dependent arguments that cannot be resolved on a motion to dismiss. *See Khoja*, 899 F.3d at 999 ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."); *see also In re BioVie Inc. Sec. Litig.*, 2025 WL 947667, at *7 (D. Nev. Mar. 27, 2025) (noticing public documents filed with SEC or readily available on defendant's website but declining to "judicially notice the truth of any statements therein to resolve factual disputes" recognizing "the risk that Defendants may cherry-pick public statements supporting their position, without referencing public materials which run counter to their arguments"); *Wang v. Zymergen Inc.*, 744 F.Supp.3d 995, 1006 (N.D. Cal. Aug. 14, 2024) (noticing documents filed with the SEC under the condition that "[t]his judicial notice is limited to the existence of these filings and does not extend to the accuracy of their contents"); *See Khoja*, 899 F.3d at 1000 (remarking "[i]t is improper to judicially notice a [document] when the substance of the [document]

-3-

is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes").

Thus, even if the Court took judicial notice of the *existence* of the documents, that does not mean that *statements* therein are true or that they show what Defendants were thinking at the time. *See Farrell v. Boeing Empls. Credit Union*, 761 F. App'x 682, 684 n.1 (9th Cir. 2019) ("[W]e take judicial notice of the existence of the website in the public realm, but decline[] to notice that the contents of the website are true.").

## C. Defendants Misuse Exhibits B and P to Invent a "Humira Precedent" Absent from both the SAC and the Prospectus

Defendants rely on portions of the Prospectus (Ex. B), together with AbbVie's publicly filed registrational package for its drug Humira (Ex. P) to contradict the SAC's allegations that the public was unaware as to which statistical methodology Acelyrin had agreed to use for Part B in terms of treatment of patient discontinuations. Specifically, Defendants claim that in the Prospectus "investors were told Humira's registrational trials were viewed as precedent; it was public that those trials used NRI." MTD 18 n.17.  Based on that alleged disclosure, Defendants ask the Court to conclude that the "Prospectus [did not] misleadingly omit[] that using NRI would somehow materially exacerbate the supposed risk from blinded, partial discontinuation data."  *Id*. Rather, "[c]ontrary to Plaintiffs' suggestion … there is nothing surprising about the fact that [the Part B] methodology was NRI" as "[t]he Prospectus disclosed Acelyrin considered as precedent Humira's (adalimumab) registrational package, … which was based on studies using NRI."  MTD 4 n.3.

As set forth in the Opposition, Defendants mischaracterize the SAC's omission theory.  Regardless, nowhere in the Prospectus does Acelyrin state that Acelyrin considered the Humira approval and the statistical methodology it used in its clinical trials as precedent.  Instead, the Prospectus simply notes that Acelyrin's leadership

group was involved in the development of Humira (and a number of other therapeutics),[1] and that if approved, izokibep would compete with Humira (and a number of other therapeutics).[2]  *See Rollins v. Dignity Health*, 338 F.Supp.3d 1025, 1031 (N.D. Cal. 2018) (denying judicial notice where the requesting parties "repeatedly do what *Khoja* forbids—ask the Court to take judicial notice of documents that they then use as a basis to challenge the factual averments in the complaint").

**D.    Defendants' Improper Request for Judicial Notice of Exhibits K-N to Support Their "No Harm, No Foul" Defense**

Defendants also proffer extraneous documents from well after the class period purporting to show (in a different, separate) Part B trial, the trial's eventual success (Ex. K.1, Ex. K.2., Ex. L1., Ex. M, Ex. N).  MTD 6-7.  Defendants use these Exhibits to argue that the discontinuation rate in the Part B trial at issue in the SAC was immaterial—a "no harm, no foul" defense that relies entirely on hindsight.  MTD 11 (citing MTD 5, 7, which relies on Exs. K-N).

As the Opposition explains, the fact that a subsequent trial met its endpoint months or years later is irrelevant to whether a reasonable investor, at the time of the IPO, was misled by the omission of the then-existing Part B data—data which Plaintiffs allege had already signaled an imminent failure of the very trial being used to value the company.  Accordingly, Defendants' motion is further improper as it seeks judicial

---

[1] *See*, Ex. P at 2, 126 ("These leaders were instrumental in achieving the first approvals, or expanded indications, for transformative therapies including Humira, Tepezza, Rinvoq, Skyrizi, Mavyret and Enbrel, that have provided clinically meaningful and differentiated benefits for patients.").

[2] *See*, Ex. P at 27 ("If approved, izokibep would compete with currently approved therapeutics, including Cosentyx, Taltz, Humira, Remicade, Enbrel, Cimzia, Simponi, Stelara, Tremfya, Xeljanz, Otezla and Orencia for PsA; Humira for HS and uveitis; and Enbrel, Remicade, Humira, Cimzia, and Simponie for AxSpA. Izokibep would also compete with other drugs used to treat such patients, including generic drugs, such as biosimilar versions of Humira and Cosentyx, including Amjevita (marketed by Amgen Inc.), Abrilada (marketed by Pfizer Inc.), Avsola (marketed by Amgen Inc.), Cyltezo (marketed by Boehringer Ingelheim), Hadlima (marketed by Samsung Bioepis), Hulio (marketed by Boehringer Ingelheim), Hyrimoz (marketed by Sandoz), Ixifi (marketed by Pfizer Inc.), and Renflexis (marketed by Samsung Bioepis), among others we anticipate will receive approvals in the near term.")

OPPOSITION TO MOTION TO REQUEST FOR JUDICIAL NOTICE
Case No. 2:23-cv-09672-FMO-MAA

notice of irrelevant documents. *See*, *e.g.*, *Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1298 n.6 (9th Cir. 2015) (denying requests for judicial notice "on the grounds that the documents to be noticed are irrelevant"); *Plevy v. Haggerty*, 38 F.Supp.2d 816, 820-21 (C.D. Cal. 1998) (declining to take judicial notice of public records that were not relevant to motion to dismiss).

Such documents are also irrelevant because these filings were issued outside of the Class Period. *See, e.g.*, *Ferreira v. Funko Inc.,* 2021 WL 8820650, at *11 (C.D. Cal. Oct. 22, 2021) (declining judicial notice of company's Form 10-K "as it was issued outside the Class Period, it was not relevant to the Court's analysis"); *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *10 (D.N.J. Dec. 27, 2019) (declining judicial notice of public records issued after the class period finding "it arguably ha[d] minimal relevance to the claims at issue"); *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *3 n.5 (D.N.J. Aug. 28, 2017) (same); *Belodoff v. Netlist, Inc.*, 2008 WL 2356699, at *4 (C.D. Cal. May 30, 2008) (same); *In re CV Therapeutics, Inc.*, 2004 WL 1753251, at *12 (N.D. Cal. Aug. 5, 2004) (declining to take judicial notice of "two press releases outside the class period [that] are not referenced in the complaint").

Nor does the SAC reference or rely on these materials. Accordingly, any consideration of these materials under the doctrine of incorporation by reference would be improper. *See Khoja*, 899 F.3d at 1006 (SEC filings, not extensively referenced in the complaint, not subject to incorporation by reference); *Kuhn v. Three Bell Cap.*, 698 F.Supp.3d 1119, 1123 (N.D. Cal. 2023) (declining to consider public documents "neither extensively referenced in the complaint nor central to resolving [plaintiff's] claims" finding "their incorporation is not required to assess the sufficiency of the claims pleaded in [the] complaint").

OPPOSITION TO MOTION TO REQUEST FOR JUDICIAL NOTICE
Case No. 2:23-cv-09672-FMO-MAA

**E.     The Arguments Raised in the MTD Relying on the Exhibits Are Summary Judgment Challenges, Not Pleading Deficiency Challenges**

It is evident that Defendants' submission of hundreds of pages of extrinsic materials is nothing more than an improper attempt to introduce their own set of factual allegations and competing theories against the SAC at the pleadings stage.

Given they fail to meet the very limited exceptions for judicial notice or incorporation by reference, considering them would convert the motion into a motion for summary judgment, and conversion is not appropriate unless the parties have had an opportunity to conduct reasonable discovery. *See* Fed. R. Civ. P. 12(b), 12(d), 56; *see also Blake v. Canoo Inc.*, 2022 WL 22919489, at *1-*2 (C.D. Cal. July 19, 2022) (denying a Rule 12(b)(6) motion to dismiss "for referencing materials outside the pleadings … persuaded that it would be more appropriate to consider the arguments and documents (including Canoo's SEC filings) in the context of a motion for summary judgment").

Defendants' Request thus "is on par with this pattern of defendants burying district courts, at the earliest stage of litigation, in hundreds of pages of exhibits purportedly subject to judicial notice or incorporated by reference in the complaint but, indeed, better saved for a later stage of the case." *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd*., 743 F.Supp.3d 1083, 1095-96 (D. Ariz. 2024) (admonishing defendants for "using [their] request for judicial notice … as a backdoor avenue for introducing evidence of the facts themselves"); *see, e.g., Khoja*, 899 F.3d at 999 ("Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage.  Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery."); *see also Hsu v. Puma Biotechnology, Inc*., 213 F.Supp.3d 1275, 1281-82 (C.D. Cal. 2016) (describing "practical reality" of "inappropriate efforts by defendants" in securities cases to "expand courts'

consideration of extrinsic evidence at the motion to dismiss stage," which "diminish the ability of wronged plaintiffs to get their constitutionally-protected day in court").

As in *DalPoggetto* and *Longo*, the Court should therefore deny the motion to dismiss and order Defendants to answer the Second Amended Complaint.

DATED: February 26, 2026        Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ *Lucas E. Gilmore*
    LUCAS E. GILMORE
Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Counsel for Lead Plaintiff Kamel Boukadoum and Co-Lead Counsel for the Class*

DATED: February 26, 2026        POMERANTZ LLP

By: /s/ *Jennifer Pafiti*
    JENNIFER PAFITI
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Estate of Fred Bergman and Co-Lead Counsel for the Class*

## **Attestation**

I attest that all other signatories listed, and on whose behalf this document is submitted, concur in the filing's content and have authorized the filing.

Dated: February 26, 2026


/s/ Lucas E. Gilmore
Lucas E. Gilmore

-9-

## <u>LOCAL RULE 11-6.2 CERTIFICATION</u>

The undersigned, counsel of record for Kamel Boukadoum and Co-Lead Counsel for the Class, certifies that this brief contains 2,472 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ *Lucas E. Gilmore*
LUCAS E. GILMORE

-10-